

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS

Grover Sellers
ATTORNEY GENERAL

Honorable J. N. Bauldwin
County Attorney
Johnson County
Cleburne, Texas

Dear Sir:

Opinion No. O-7025

Re: Construction of House Bill
No. 98, Acts 1943, p. 215,
Ch. 134. (Article 3109a,
V. A. C. S.)

Your letter of recent date requesting an opinion from this department of the above subject matter is as follows:

"The Chairman of the Johnson County Democratic Committee resigned on June 17, 1946, and Mr. Ruel C. Walker, an attorney of this city, was elected to fill his unexpired term. Mr. Walker is arranging to have the ballots printed for the Democratic Primary Election on July 27th, and has just called my attention to the provisions of Article 3109a, Tex. Rev. Civ. Stat. 1925.

"The present boundaries of the various election and commissioners precincts can be determined only by searching through the records of the Commissioners' Court. This will involve a great deal of time and expense. In addition, the printing of separate ballots for each County Commissioner's race will place a greater burden upon the election judges and will undoubtedly result in confusion and improper voting in some instances. It is believed that a literal compliance with the provisions of Article 3109a will produce an undesirable result and should be avoided unless the statute is mandatory.

"Accordingly, it is requested that you advise me upon the following points:

"(1) Under the provisions of Article 3109a, is it mandatory that in the coming Democratic Primary Elections on July 27, 1946, separate ballots be printed for each County Commissioner's race, each ballot bearing the names of the candidates for the office of County Commissioner in not more than one commissioner's precinct in

"(2) Would a failure to comply with the terms of Article 3109a in any way affect or impair the validity and effect of such primary election?

"(3) If the provisions of the statute are mandatory, is it proper for all of the ballots to be identical with the exception of the candidates for County Commissioner. For example, should all of the ballots bear the names of all the candidates for the offices of the Justice of the Peace, Constable, etc. in the various precincts."

House Bill No. 98, Acts 1943, 48th Legislature, p. 215, Ch. 134 (Article 3109a, V. A. C. S.) is as follows:

"An Act regulating the official ballot and requiring the County Committee to print a minimum of four (4) different official ballots for each county for primary elections, otherwise as pursuant to Article 3109, Revised Civil Statutes of Texas, 1925, and other applicable statutes, differing only with respect to the office of County Commissioner for each commissioner's precinct in the county; providing for the furnishing of same to election officials corresponding to commissioner's precincts and for each precinct if the election precinct includes more than one or parts of more than one precinct, and requiring such officials to determine in which commissioner's precinct a voter resides before furnishing him with a ballot which shall contain the names of candidates for commissioner upon which he is entitled to vote; providing this Act shall be cumulative and shall not prohibit printing of ballots corresponding to various precinct offices; and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. In primary elections involving the election of County Commissioners, in addition to the other officers, the county committee in each county in this State shall be required to print a minimum of four (4) different official ballots for primary elections, as otherwise required by Article 3109, Revised Civil Statutes of Texas, 1925, to differ with respect to the office of County Commissioner

for each commissioner's precinct in the county. Each official ballot, in addition to the names of candidates for other offices as prescribed in Article 3109, shall contain the names of candidates for other offices as prescribed in Article 3109, shall contain the names of candidates for the office of County Commissioner in not more than one commissioner's precinct in the county. The election officials for each voting precinct shall be furnished such official ballots which contain the names of candidates for the office of County Commissioner which are to be voted on by the voters in the particular election precinct. If the election precinct includes more than one, or parts of more than one commissioner's precinct, the election officials shall be furnished with appropriate official ballots for each commissioner's precinct. Election officials in each voting precinct shall be required to determine in which commissioner's precinct a voter resides before furnishing him with an official ballot, and shall furnish him with the official ballot containing the names of candidates for the office of county commissioner which the voter is entitled to vote upon. In all other respects, the official ballot for primary elections provided for in Article 3109 shall be subject to regulations contained in Article 3109 and other applicable Statutes.

"Section 2. This law is cimulative and shall not prohibit the printing of ballots corresponding to various precinct offices.

"Section 3. The fact that in many counties of the State election precincts include more than one commissioner's precinct within their boundaries, and the fact that voters should vote by official ballots containing only the names of candidates for offices for which the voter is entitled to cast a vote, and the shortness of this Session of the Legislature, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and said Rule is suspended, and that this Act shall take effect and be in force from and after its passage, and it so enacted."

In the case of Dunagan v. Jones, 76 S. W. (2d)

219, it was held that statutory provisions as to the preparation of the ballot must be strictly followed.

The rule of statutory construction of election laws applicable to the questions you have submitted is well stated in the case of Altgelt v. Callaghan, 144 S. W. 1166, (dismissed for want of jurisdiction). We quote the following from said case:

"Election laws are passed to purify and keep pure popular elections, and not to provide pitfalls and snares for voters and prevent the right of suffrage by technicalities which do not go to the fairness of the election. Certain duties are laid upon the officers of election, but a failure to perform those duties should not be permitted to disfranchise the honest voter who desires to register his ballot on questions of state, unless the law has explicitly declared that they shall. The matters of preparation of the ballots, and marking 'voted' on them, are duties enjoined upon the officers of election and it was never contemplated by the Legislature that citizens should be disfranchised by the failure of the officers to perform those duties. State v. Phillips, 53 Tex. 393, 51 Am. Rep. 646; Fowler v. State, 68 Tex. 34, 3 S. W. 255; Kulp v. Railey, 99 Tex. 310, 89 S. W. 957; Gallagher v. Church, 142 S. W. 671, by this court, not yet officially reported; People v. Wood, 148 N. Y. 145, 42 N. E. 536. A brief review of those cases will not be inappropriate.

"In the case of State v. Phillips, the election was sought to be avoided because a large number of the ballots were 'diamond shaped', which was alleged to be a device in violation of the election law of 1879. Laws 1879, c. 83. The court held that the ballots were not illegal.

"In Fowler v. State, it was said: 'The object of every popular election for officers is to ascertain the will of the people as to what persons shall serve them as such in the various positions to be filled. A free, fair and full expression of the public will is sought, and certain means are prescribed by law as the most certain to bring about the desired result. Some of these, from their very nature, or from the manner in which they are prescribed, are deemed absolutely

essential to the accomplishment of the desired
result. Among these may be named the require-
ment that the voting shall be by ballot; that
it shall take place on a certain day, and
within certain precincts, etc. These are
prescribed to insure perfect freedom of choice
to the citizen, to serve his convenience in
getting to the polls, and to bring out a full
vote at the election. Then there are other
requirements such as those which have been
neglected in this case, that are merely
formal in their character. . . . But these
requirements are always treated as directory;
the law, either expressly or in effect, makes
them essential to the validity of the election.
Electors must not be deprived of their votes
on account of any technical objection to the
manner in which the election has been held,
or for any misconduct on the part of pre-
siding officers, if these have not affected the
true result of the election.' In that case the
kind of ballot boxes prescribed by law were not
used.

"In the case of Kulp v. Railey a candidate
had not been nominated nor his name placed
on the ballot as required by the Terrell
election law, and his election was contested
on that ground, and the Supreme Court held:
'But, while this course of procedure in making
nominations is plainly prescribed, there is
nowhere in the statute a provision that
votes shall be void or shall not be counted
because of a departure from the rules laid
down in the making of nominations. On the
contrary, the general scheme of the act is
against such an idea. All questions of that
sort are determined for the voter, before the
election, by the official ballots. By minute
directions and commands addressed to the
officers, the law seeks to secure the forma-
tion of a ballot which shall show to the voter
that the preliminaries have been arranged.
Most of these commands can be enforced other-
wise than by defeating votes after they have
been case, and many have attached to them
the sanction of severe penalties for their
violation. In some instances it is expressly
provided that votes shall not be counted if
certain rules are not observed; but, as we have
said, there is nothing to indicate a purpose
that questions arising out of the making and
certifying nominations shall affect the validity
of an official ballot after it has been voted.

The voter has nothing to do with the making up of the ballot, but is required to use it, in order to exercise his right to vote. He can only vote for those whose names are printed on it or strike them out and insert others. The ballot comes to him from the officers of the law, regular on its face and authenticated, both by the printing on it and by the signature of the judge of election, as the ballot he is required to use. If it is in the power of the Legislature to thus impose on voters in exercising their constitutional right, the necessity of voting tickets prepared for them in advance, and yet to defeat their choice, not for act or omission of their own, but because of an antecedent dereliction of the officers appointed by law to prepare the ballots, certainly no purpose to do so can be imputed to the Legislature without the clearest expression.'

"In the case of Gallagher v. Church, this court held that a failure to mark the word 'voted' on the ballots did not render them illegal, and the New York case cited fully supports the Texas decisions cited, and the rule announced in them would dispose of every act of misconduct alleged against the officers of election in the rejected section, No. 6, except those in regard to a failure of the presiding judges to place their signatures upon the ballots in certain precincts and number them."

In answer to your first and second questions it is our opinion that the legislature, by the enactment of Article 3109a, has required the printing of a minimum of four different official ballots for primary elections. The duty of printing these ballots is enjoined upon the County Committee. On the basis of the foregoing authorities, it is our opinion that a failure to perform this duty would not disfranchise the voters and invalidate the election if, in said election, the will of the voters can be ascertained.

Where a statute is expressed in plain and unambiguous language and its meaning is clear and obvious, there is no room for construction. (Goolsby v. First National Bank, Beaumont, 283 S. W. 472. Sparks v. State, 174 S. W. 351). Therefore, in answer to your third question, Article 3109a, by its plain and unambiguous language applies only to the office of County Commissioner and not to the other offices mentioned in your request.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ J. C. Davis, Jr. & John Reeves
Assistant

Jr:ms:jrb